515 So.2d 572 (1987)
STATE of Louisiana
v.
Thomas McDANIEL.
No. 87 KA 0152.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Rehearing Denied December 11, 1987.
*573 William R. Campbell, Jr., New Orleans, for the State.
Clarence P. Guillory, Office of Indigent Defender, Covington, for McDaniel.
Before WATKINS, CARTER and CHIASSON[*], JJ.
WATKINS, Judge.
Thomas McDaniel was indicted by the St. Tammany Parish grand jury for aggravated rape, in violation of LSA-R.S. 14:42.[1] Defendant entered the dual plea of not guilty and not guilty by reason of insanity. He was tried by a jury, which convicted him as charged. The trial court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole or suspension of sentence. He appealed, setting forth thirteen assignments *574 of error and briefing six. Assignments of error not briefed on appeal are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4.
Defendant was charged with the rape of a fifteen year old girl, who was attacked as she walked along an interstate highway service road in Slidell, Louisiana, with her mother. The incident occurred at approximately 4:00 in the afternoon as the women returned to their apartment from a nearby convenience store. Both women testified their attention was drawn to defendant as he passed them on the service road because he was jogging in blue jeans and looked "weird." Defendant spoke to them in greeting as he ran past; and the women acknowledged his greeting. Shortly thereafter, he ran up behind them, grabbed the victim by her hair and arm and pulled her down into the brush. Defendant carried a plastic toy pistol, which appeared to be a real weapon to the victim's mother (but was not seen by the victim herself at that time). He told the victim's mother to leave or he would kill both of them. She ran off to summon help as he dragged the victim through the woods.
Defendant ordered the victim to undress, repeatedly choked and slapped her, and raped her four times. She testified that, during the last episode, he told her that "[she] had better enjoy it because he was going to kill [her] when he was finished." In his taped statement, defendant also admitted that he forced her to perform oral sex upon him.
The victim's mother ran to the highway and flagged down a car. The driver took her to the nearby home of his friend, a deputy sheriff who was off-duty at the time. They summoned help, and several other deputies arrived within fifteen minutes. Defendant was still with the victim when they arrived. He fled through the woods, and the deputies gave chase. After sprinting about 150 yards, defendant crouched to the ground and attempted to hide behind a clump of grass. He was arrested at the scene. After booking, defendant was taken to a local hospital and treated for injuries sustained during the chase.
Defendant was charged with aggravated rape and, by separate indictment, with aggravated crime against nature. He gave a taped confession in which he admitted that he "assaulted" the victim but claimed that he was under the influence of alcohol and a homemade drug called "crank", a mixture of muriatic acid and benzedrine, at the time.
ASSIGNMENT OF ERROR NUMBER ONE:
By this assignment of error, defendant argues that the trial court erred by denying his motion for a continuance, for which he was forced to move because of the absence of a material witness.[2] He claims that he was prejudiced because he was not able to present the testimony of a witness who was with him on the day in question and could have testified as to the defendant's drugged condition, bizarre actions and behavior on the day of the rapes.
Before the trial began, defendant apparently notified the court in chambers when he discovered his witness was absent. He moved for a continuance before jury selection, noting that the witness had been in court for the preceding three days. The trial court denied defendant's motion for a continuance but issued a bench warrant for the production of the witness. The state then presented its case. During the presentation of the defense, defendant sought a recess; and the court denied the motion. Defendant now claims he exercised due *575 diligence, but was unable to obtain the testimony of an essential witness, and that he was prejudiced because, without the testimony of this witness, he was not able to present independent corroboration of his behavior and actions.
LSA-C.Cr.P. art. 707 presents the general requirements for a motion for a continuance. It provides as follows:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
LSA-C.Cr.P. art. 709 provides for a motion for a continuance based upon the absence of a material witness, as follows:
A motion for a continuance based upon the absence of a material witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Defendant acknowledges that he did not file a written motion. He claims, however, that he was not required to do so because of the fact that the grounds for the continuance arose unexpectedly and he had no time to prepare his motion in writing.
Initially, we note that the record is essentially devoid of proof of defendant's claims regarding the necessity for the testimony of this witness. On the record before us, we are not able to determine whether or not defendant did actually show the facts to which the witness was expected to testify, the materiality of the testimony, and facts showing the likelihood that the witness would be available at another date. Since defendant apparently chose to advise the court of his dilemma at conferences off the record and no written motion for a continuance was filed, he has presented nothing for this court to review.
Moreover, we note that it is doubtful that defendant could establish the materiality of the testimony of the witness, as required by LSA-C.Cr.P. art. 709. At the hearing on his motion for a new trial in which he also argued this claim, defendant set forth on the record the general nature of the testimony of the witness. Therein, defendant asserted that the witness would be able to testify that the defendant was drugged, the condition that he was in, and his bizarre actions and behavior on that day. However, these facts are relevant to the defenses of insanity or intoxication, neither of which was available to defendant.
It is well settled that voluntary intoxication can be considered as a defense only in cases where specific intent is a necessary element of the crime. State v. Boleyn, 328 So.2d 95 (La.1976). Aggravated rape is a general intent crime. See LSA-R.S. 14:11; 14:42. In cases wherein the accused is voluntarily intoxicated at the time of the commission of the offense, the necessary criminal intent is generally found in the accused's intention to become intoxicated, i.e., the accused is held to have intended, in law, all the consequences of his intoxicated condition. State v. Boleyn, supra. Thus, the evidence of intoxication to which the witness would have testified was not a material fact.
Similarly, the evidence of defendant's bizarre behavior on the day prior to the rape would not have been material because it would have tended merely to illustrate his drug-related intoxication and not a mental defect in the nature of insanity. See State v. Rives, 407 So.2d 1195 (La.1981). Louisiana does not recognize the doctrine of diminished capacity. State v. Lecompte, 371 So.2d 239 (La.1979), on rehearing.
The granting or refusal of a motion for a continuance rests within the sound discretion *576 of the trial judge, and his ruling will not be disturbed on appeal absent a clear abuse of discretion. Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case. Convictions will not be reversed absent a showing of specific prejudice caused by the denial of a continuance. State v. Gaskin, 412 So.2d 1007 (La.1982); State v. Shields, 444 So.2d 287 (La.App. 1st Cir.1983), writ denied, 446 So.2d 312 (La. 1984).
We find, therefore, that the trial court did not err in denying defendant's motion for a continuance. The court attempted to accommodate defendant by issuing a bench warrant; however, in light of the tentative materiality of the evidence to be presented by the witness and the apparent lack of assurance that the witness would be available later, the trial court did not err in refusing to delay a trial in progress to secure this witness. These assignments of error have no merit.
ASSIGNMENTS OF ERRORS FOUR, FIVE AND SIX:
By these assignments of error, defendant submits that the evidence is not sufficient to sustain the conviction and that the trial court erred by denying his motions for a new trial and a post verdict judgment of acquittal based on this ground.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting LSA-C.Cr.P. art. 821 (pertaining to motions for post verdict judgment of acquittal based on insufficiency of evidence) is whether or not the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
Defendant argues that the evidence was not sufficient because he carried a small plastic toy pistol and, therefore, was not armed with a dangerous weapon, as required by LSA-R.S. 14:42 A(3). However, the state's answer to defendant's motion for a bill of particulars specified that the prosecution was based on LSA-R.S. 14:42 A(1), (2) and (3); that is:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force;
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
The victim testified that she fought defendant as he dragged her into the bushes. After defendant overcame her resistance by beating and choking her to the point where she almost lost consciousness, he raped her twice. Thereafter, he told the victim that he intended to kill her when he was finished. She testified that she caught a glimpse of the gun and thought that he intended to kill her. She tried to escape, but he caught her as she ran. Sheriff's deputies arrived as defendant was committing the fourth rape.
The victim's testimony clearly establishes that defendant committed aggravated rape. She testified that defendant raped her after overcoming her resistance and raped her again after threatening her into submission. Photographs introduced by the state showing numerous scratch marks clearly illustrate the degree of force used by defendant in dragging her, as well as vivid bite marks on her neck and breast. Any rational trier of fact could have found that defendant was guilty of aggravated rape as defined by LSA-R.S. 14:42 A(1) or (2).
Moreover, defendant's claim that the offense was not aggravated because he was not armed with a dangerous weapon is without merit because victim was under threat of great bodily harm accompanied by apparent power of execution.
Defendant further argues that he met his burden of proof establishing the defense *577 of insanity. Essentially, he contends that his drug-induced intoxication rendered him incapable of distinguishing between right and wrong.
The defense of insanity is without merit for the reasons given under Assignment of Error Number One.
This assignment of error has no merit.
ASSIGNMENT OF ERROR NUMBER SEVEN:
By this assignment of error, defendant urges that the mandatory sentence imposed, life imprisonment without benefit of probation, parole or suspension of sentence, is unconstitutionally excessive under Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). He submits that the mitigating factors involved, including his drug problem, lack of a criminal record, family and work history, and the fact that he was not armed, mandate a lesser sentence. Defendant also argues that, even if his drugged condition did not rise to the level of insanity, he was obviously in a state of diminished capacity and that the mandatory sentence is excessive in light of the limited sentence that could have been imposed if he had been convicted of the lesser offense of forcible rape.
In State v. Foley, 456 So.2d 979 (La. 1984), the Louisiana Supreme Court considered the same argument presented herein. In Foley, that court stated as follows:

Solem v. Helm, supra, held that a life sentence without benefit of parole imposed on a defendant who had six prior felony convictions was unconstitutionally excessive. Helm wrote a check on a bank at which he had no account. Had he been a first offender, his maximum sentence would have been five years imprisonment and a $5,000 fine. The life sentence was imposed by operation of the South Dakota recidivist statute which specifically excluded the possibility of parole.

Helm held that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.... But no penalty is per se constitutional." 103 S.Ct. at 3009-3010. The Helm court set forth the following objective factors to guide reviewing courts: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentence imposed for commission of the same crime in other jurisdictions. While requiring proportionality analysis, even in noncapital cases, Helm did point out that, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." 103 S.Ct. at 3009.
Applying these factors to this crime and sentence, defendant's life sentence is not excessive. As to the gravity of the offense, the legal definition of aggravated rape in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape. Distinctions are drawn based on the degree of force and the resistance of the victim. The jury determines the permissible punishment by a verdict which fits the crime by assessing the degree of force employed. State v. Willie, 422 So.2d 1128 (La.1982).
Defendant does not expressly contend that there is insufficient evidence to convict him of aggravated rape but cites numerous forcible rape cases, and argues that their facts are no more egregious than those here. However, the evidence adduced at this trial justifies the jury's verdict. [footnotes omitted].
456 So.2d at 981-982.
Defendant's claims of mitigating circumstances are without merit. The jury, in refusing to return a verdict of insanity, obviously rejected any notion that defendant was unaware of the criminality of his actions; and, having been rejected by the trier of fact in returning the verdict and the trial court in the denial of defendant's motion for a post-verdict judgment of acquittal, defendant's claim of a self-induced "diminished capacity" was not a proper consideration. Moreover, defendant's attempt *578 to claim mitigation because the weapon was a toy pistol is also without merit. The manner in which defendant used the pistol created a situation calculated to cause death or great bodily harm. See State v. Green, 409 So.2d 563, 566 (La.1982). Finally, defendant's claims that a lesser sentence should have been imposed because this was merely "one serious mistake" are without merit. As the Louisiana Supreme Court noted in State v. Foley, supra, aggravated rape inflicts mental and psychological damage to its victim and undermines the community sense of security. The physical trauma and indignities suffered by the young victim of this offense were of enormous magnitude, as were the emotional damage and sheer terror caused by defendant. A lesser sentence, even if available, would truly deprecate the seriousness of the offense.
Solem v. Helm also requires that the sentence be compared with that which could be imposed on other criminals in this state and for this offense in other states. In Foley, supra, the court found as follows:
Louisiana statutes mandate life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the commission of the following crimes:
(1) LSA-R.S. 14:30, First Degree Murder, where the jury does not unanimously recommend the death penalty;
(2) LSA-R.S. 30.1, Second Degree Murder;
(3) LSA-R.S. 14:42, Aggravated Rape;
(4) LSA-R.S. 14:44, Aggravated Kidnapping; and
(5) Certain offenses under the habitual offender law.
Except for criminal conduct subject to sentencing under the habitual offender statute, mandatory life sentences are imposed only for violent crimes against the person. Louisiana's statutory scheme recognizes five grades of culpability for illegal sexual conduct ranging from aggravated rape to sexual battery. This scheme is complimented by the responsive verdict system. Louisiana does not single out aggravated rape for disproportionate punishment.
Compared with the sentencing statutes of other states for the same crime, Louisiana's statute is not facially excessive. Many jurisdictions (not Louisiana) have adopted, with modifications, the Model Penal Code classifications. Under this Code, rape under these circumstances would be classified as a first degree felony. The ordinary term for such a felony is imprisonment to a minimum term of not less than one year nor more than ten years and a maximum term of life. In Alabama, for example, rape in the first degree is a Class A felony punishable either by life imprisonment or a term of ten to ninety-nine years. If a deadly weapon is used in the commission of the crime, punishment can not be less than twenty years imprisonment. Ala.Code tit. 13A, §§ 13A-6-61, 13A-5-6. In Missouri and Michigan, a life sentence is possible but not mandatory. Mo.Rev. Stat. §§ 566.030, 558.011 and MSA § 28.788(2) [M.C.L.A. § 750.520]. Maryland requires that a person convicted of first degree rape be subject to imprisonment for no more than the period of his natural life. Md.Crim.Law Code Ann. § 462. In Delaware, rape is a Class A felony, carrying a punishment of life imprisonment which cannot be reduced or suspended by the court. Del.Code tit. 11, §§ 764, 4204, 4205.
Thus, while not all jurisdictions surveyed mandate life imprisonment, all view aggravated rape as a serious crime meriting substantial punishment. Unlike the defendant in Helm who could have received his life sentence in only one other state, Foley's sentence could have been meted out in other jurisdictions. [footnotes omitted]
456 So.2d at 983-984.
We find, therefore, that the mandatory sentence of aggravated rape herein is not unconstitutionally excessive under either the Louisiana or United States Constitutions. This assignment of error has no merit.
*579 SUPPLEMENTAL ASSIGNMENT OF ERROR NUMBER ONE:
By this assignment of error, defendant submits that the trial court erred by allowing the state to present this case after having called another case for trial. The reference to the other offense, obviously inadvertent, occurred before voir dire began. Both indictments charged an offense committed by defendant against the same victim, arising out of the same incident. The first indictment called, number 149074, apparently charged defendant with an aggravated crime against nature. After the clerk read the bill number, the assistant district attorney greeted the panel members and told them the accused was charged with aggravated rape. Defendant objected to the reference and remarked that the indictment number previously read was for aggravated crime against nature. Thereafter, the assistant district attorney advised the court that the prosecution ensued under indictment number 149075 and was for aggravated rape. The court overruled the objection. After the entire jury had been selected, defendant moved for a motion in limine, prohibiting the state and its witnesses from referring to the charge of aggravated crime against nature or oral sex. The court granted the motion.
Defendant argues that the reference to the aggravated crime against nature was a reference to another crime, as to which evidence would be inadmissible; and, therefore, he was entitled to a mistrial under the provisions of LSA-C.Cr.P. art. 770(2).
Initially, we note that defendant did not request a mistrial. The court did not err in failing to grant a mistrial sua sponte. See LSA-C.Cr.P. art. 770, which authorizes the court to grant a mistrial upon motion of defendant. [Emphasis added.] Moreover, the reference to the aggravated crime against nature was made by defense counsel; the clerk read only the indictment number.
In any event, the remarks complained of do not constitute evidence of another crime to which evidence was not admissible. The aggravated crime against nature was a part of the same offense as the aggravated rape. Evidence of other crimes which are part of the res gestae of the charged offense is admissible without balancing the probative value of the evidence against its prejudicial effect and without any pretrial Prieur notice by the state. LSA-R.S. 15:447; LSA-C.Cr.P. art. 720; State v. Jackson, 450 So.2d 621 (La. 1984).
Although defendant intimates in his brief that the district attorney's remarks were in contravention of the court's ruling on defendant's motion in limine, it is clear that the court's order was issued at the conclusion of jury selection; the inadvertent reference to the incorrect indictment was made before jury selection. Thus, the remarks were not in contravention of the court's order but were indistinct references to another part of the res gestae of the offense for which defendant was on trial. This assignment of error is without merit.
The conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this Court by the Supreme Court of Louisiana, to fill the vacancy created by the death of Judge John S. Covington.
[1] The indictment contains an error as to the date of the offense which was not, apparently, noticed by the parties. In one section, the indictment charges that the offense was committed on February 21, 1986; in another section, the bill was amended to charge that the offense was committed on March 5, 1986. Testimony by the witnesses established the offense actually occurred March 5, 1986. The record does not reflect any manner in which the defendant could have been prejudiced by the inadvertent reference to the wrong date. The date of the offense is not an essential element of the crime charged herein and, thus, need not even be mentioned. See LSA-C.Cr.P. art. 468; State v. Hatcher, 372 So.2d 1024 (La.1979). We find the indictment was not invalid because of the error as to the date contained therein.
[2] In defendant's second assignment of error, he claimed the trial court erred by denying his motion for a recess on this identical ground. A continuance is the postponement of a scheduled trial or hearing and shall not be granted after the trial or hearing has commenced; a recess is a temporary adjournment of a trial or hearing that occurs after the trial or hearing has begun. LSA-C.Cr.P. art. 708. A jury trial commences when the first prospective juror is called for examination. LSA-C.Cr.P. art. 761. Although defendant also moved for a recess, which was denied, in his brief he contests only the denial of his motion for a continuance. However, a continuance and a recess are evaluated by the same standard. State v. Warren, 437 So.2d 836 (La.1983).