CRAIN, Judge.
Carlwynn Turner was charged by grand jury indictment with aggravated rape, a violation of LSA-R.S. 14:42. Following trial by jury, he was found guilty as charged. He was sentenced to the mandatory term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals, urging as his sole assignment of error that the evidence was insufficient to support the guilty verdict.
FACTS
During the early morning hours of November 2, 1988, the victim, a thirteen year old girl, was allegedly raped by defendant. Defendant admitted having sexual intercourse with the victim at that time; however, he alleged that the acts were consensual.
In January, 1988, Judy Harris, the victim’s mother, was living with her husband and three daughters on South Boulevard in Baton Rouge. Mrs. Harris met defendant by telephone. An inmate at Hunt Correctional Institute would contact his mother, Mrs. Harris’ neighbor, by calling the Harris residence. This inmate asked Mrs. Harris to allow other inmates to make telephone calls by using the three-way calling feature on her phone. She agreed and started placing calls for defendant. Between January and June, 1988, when defendant was released, Mrs. Harris had numerous telephone conversations with defendant. She also visited him at the prison. On one occasion, she took her children, including the victim, to visit defendant. In May, 1988, Mrs. Harris physically separated from her husband and rented a home on Frisco Boulevard for herself and her three daughters. Defendant began living there upon his release from prison in June.
On November 1, 1988, defendant came home from work at about 7:00 p.m. and left *202 home about 7:30 p.m. When Mrs. Harris fell asleep about 10:30 p.m., defendant was not yet home. She awoke after midnight, and saw defendant taking her purse from the bedroom. They started screaming at each other and fighting. Defendant grabbed a butcher knife and threatened her and her children. At one point, defendant gave socks to Mrs. Harris and her children to put over their eyes and he told them he was going to take them to a place where no one would hear from them. Although he followed her, Mrs. Harris was able to escape from defendant and run to a neighbor's house to call the police. While Mrs. Harris was gone, defendant grabbed the youngest daughter. The victim jerked her younger sister away and told defendant to take her instead. Defendant held a butcher knife against the victim’s throat and took her to a vacant house next to her home. There he forced the victim to enter a large closet, take off her clothes, and have sexual intercourse with him. During the time she was with defendant, the victim heard her mother and police searching for her, but they were unable to see her. Defendant eventually fell asleep but wrapped his hand around the victim’s ankle to keep her from running away. Everytime she tried to move, defendant jerked the victim back. After dawn, defendant awoke, forced the victim to have anal intercourse, and then left the vacant house.
After learning that her youngest daughter saw defendant, Mrs. Harris and her sister searched for and found the victim. The victim told her mother that defendant forced her to have intercourse. Mrs. Harris called the police. Subsequently, defendant was apprehended. While in custody, defendant wrote two letters to Mrs. Harris, asking for forgiveness and stating he did not have an explanation for why he did “such a terrible thing.”
At the trial, Mrs. Harris admitted that she had loved defendant and had miscarried a baby fathered by him. She also stated that the victim is a headstrong and disobedient child.
The victim testified that defendant forced her to have intercourse with him. She denied telling defendant, prior to the rape, that she wanted to have sex with him. She also stated that she sometimes talked with defendant on the phone prior to his living with her mother, and hung up the telephone on him once when he asked if she wanted to have sex.
The victim’s younger sister testified that she heard her mother and defendant fighting before her mother ran out of the house. She also stated that defendant had a knife in his hand when he grabbed the victim and took her away from the house.
Defendant testified on his own behalf. He stated that he had conversations with the victim, prior to his release from prison, about having sex when he was released from prison. About one month prior to the alleged rape, he and the victim almost had sex, but the victim’s mother returned home before it occurred. Defendant denied holding a knife on the victim, threatening or hurting her, and stated that she consented to the sexual activity.
SUFFICIENCY OF THE EVIDENCE
In his sole assignment of error, defendant contends that the evidence was insufficient to support the conviction. Specifically, he argues that the State failed to prove that sexual intercourse occurred without consent of the victim. He further contends that the victim’s testimony conflicted with his own testimony and that of other witnesses and, thus, presents an issue of credibility of the witnesses.
The proper method to raise the issue of the sufficiency of the evidence is by motion for post-verdict judgment of acquittal. State v. Jordan, 489 So.2d 994, 996 (La.App. 1st Cir.1986). Despite a defendant’s failure to properly raise the issue, this Court will consider it when briefed pursuant to a formal assignment of error. State v. Britt, 510 So.2d 670, 672 (La.App. 1st Cir.1987).
Aggravated rape includes the act of anal or vaginal sexual intercourse, deemed to be without the victim’s lawful consent because the victim is prevented from resisting by threats of great and immediate bodily harm *203 and the apparent power of execution. LSA-R.S. 14:42(A)(2). Herein, the only contested element of the crime is lack of consent. Defendant claims that the victim willingly engaged in the acts with him.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State established the elements of the offense beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Johnson, 529 So.2d 466, 472 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder’s determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The testimony of the victim alone is sufficient to prove the elements of the offense. Furthermore, the trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d at 473.
Our review of the testimony at trial convinces us that the State presented sufficient evidence to prove that the victim did not consent to the acts of sexual intercourse with defendant. The jury obviously elected to believe the testimony of the victim and other state witnesses and to reject that of defendant. The victim, who was thirteen years old at the time of the offense, testified about the incident and stated that defendant forced her to have sexual intercourse three times, twice vaginally and once anally. Her testimony established the elements of the offense. The testimony of the victim’s mother and her younger sister corroborated the victim’s testimony that she did not voluntarily leave her house with defendant. Furthermore, expert medical testimony indicated that the victim had lacerations and a small amount of bleeding in the vaginal and anal areas. According to the rape crisis volunteer doctor who performed the examination on the young victim, the lacerations would be an indication of force, tremendous pain in both the vaginal and anal area, and an unplea-surable experience for the victim. Moreover, the contradictions, if any, among the testimony of the State’s witnesses are insignificant. Only defendant’s testimony supports his contention that the victim consented to the repeated acts of sexual intercourse.
After a careful review of the record herein, we find that a rational trier of fact, viewing all of the evidence as favorably to the prosecution, as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the victim did not consent to sexual intercourse with defendant and that defendant was guilty of aggravated rape.
CONVICTION ’ AND SENTENCE AFFIRMED.