J^CLAIBORNE, J.
The defendant, Dwayne Davis, was charged by grand jury indictment with two counts of distribution of cocaine, a violation of La. R.S. 40:967. Defendant pled not guilty, and, following a jury trial, he was convicted as charged. The trial court sentenced the defendant to ten years at hard labor on the first count, with the first five *78 years to be served without the benefit of probation, parole, or suspension of sentence. The trial court also imposed the same sentence for the second count, and further ordered that the sentences be served consecutively. The defendant’s attorney filed a motion for new trial on June 8, 2000, and an amended motion for new trial on June 14, 2000. After a hearing, the trial court denied the motion for new trial. The defendant also filed a motion to reconsider sentence which the trial court denied without a hearing. The defendant has appealed, relying on five assignments of error for reversal of his conviction.
FACTS
Beginning sometime in January of 1998, Elie Trunell was working as an undercover narcotics agent for the Delta Task Force. The Delta Task Force was an operation involving the joint participation of West Feliciana Parish, East Feliciana Parish, Baker, and Zachary. Trunell was not a police officer, but had been recommended to the task force by Mississippi law enforcement authorities for which Trunell had previously worked. The state of Mississippi did not participate in the task force, but there was some coordination with Mississippi authorities. While working for the Delta Task Force, Trunell was paid $50.00 per case plus gas expenses. When he would testify, Trunell was also paid a witness fee.
On or about July 19, 1998, Trunell drove by a house in the Solitude area of West Feliciana Parish where the defendant and another man named Joseph Jones were located. As Trunell drove up to the house, Jones came up to his vehicle and |3asked what he wanted. Trunell responded that he wanted a “twenty,” or twenty dollars worth of crack cocaine, and gave the money to Jones. Jones then went to the defendant, gave him the money, and the defendant gave him the cocaine. Jones then passed the cocaine to Trunell. Trunell also took part in another transaction a few minutes later with the defendant and Jones that was substantially the same as the first. The defendant was convicted of two counts of distribution of cocaine, and this appeal follows.
SUFFICIENCY OF THE EVIDENCE
In his second assignment of error, the defendant argues that the evidence presented at the trial was not sufficient to prove all of the elements of distribution of cocaine beyond a reasonable doubt. According to the holding of the Louisiana Supreme Court in State v. Hearold, 603 So.2d 731, 734 (La.1992), in cases such as this where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. The reason for determining the sufficiency of the evidence first is that insufficient evidence to support the guilty verdict bars the retrial of a defendant because of the constitutional protection against double jeopardy, thereby rendering all other issues moot. See Hudson v. Louisiana, 450 U.S. 40, 43-45, 101 S.Ct. 970, 972-73, 67 L.Ed.2d 30 (1981). Accordingly, we will first determine whether the evidence was sufficient to support defendant’s convictions for distribution of cocaine.
The standard of review for testing the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime, and the defendant’s identity as the perpetrator, beyond a reasonable doubt. See La.Code Crim. P. *79 art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990); State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 of the Louisiana Code of Criminal Procedure is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.
The defendant was convicted of two counts of distribution of cocaine. In order to convict an individual of distribution of cocaine, the state must prove a delivery or physical transfer, guilty knowledge of the controlled dangerous substance at the time of transfer, and the exact identity of the controlled dangerous substance. State v. Bradford, 32-747, p. 6 (La.App.2d Cir.10/27/99), 745 So.2d 800, 805.
The state’s case against the defendant largely came down to the testimony of a single witness, Elie Trunell. Trunell testified that on July 19, 1998, he went to a house in the Solitude area of West Felicia-na Parish where the defendant and Joseph Jones were. Jones approached Trunell’s vehicle and asked him what he wanted. Trunell replied that he wanted a twenty, or twenty dollars worth of crack cocaine. Trunell testified that he gave Jones the money, and that Jones took the money to the defendant. Jones gave the money to the defendant who then gave the crack cocaine to Jones, who ultimately brought it to Trunell. Trunell completed another transaction with the defendant a few minutes later in the same manner. Trunell testified that he knew the defendant at the time these transactions took place, and that he was close enough to the defendant and Jones to see them passing the money and cocaine between them.
In addition to this testimony, the state introduced into evidence the crack cocaine received by Trunell in the transactions along with the report of the scientific analysis stating that the substance was cocaine. Testimony from Trunell Rand other witnesses established the chain of custody of the cocaine without objection.
The thrust of the defendant’s argument at trial and on appeal is to undermine the credibility of the state’s primary witness, Elie Trunell. Trunell had previously been convicted in Mississippi of first-degree murder and burglary of an inhabited dwelling. The convictions were overturned on appeal, and Trunell made a deal with prosecutors and received a suspended sentence. The defendant introduced evidence of three other convictions for which Trunell had been assessed fines and that he denied recalling. Furthermore, Trunell indicated in his testimony that he had money difficulties while working for the Delta Task Force, as well as at the time of trial. On the other hand, Trunell did assert in his testimony that he never made up a case in order to collect the fee.
In addition to questioning Trunell about his legal and financial difficulties, the defendant attempted to call into question Trunell’s recollection of the events surrounding the transactions at issue in this case. During cross-examination, the defendant established that Trunell did not have any detailed memory of the transactions that had happened approximately two years before. He did not have a written description of the defendant in his reports, although Trunell did state that those would have been in his notes that had been lost. In addition, Trunell could not remember any of the physical characteristics of the individual who sold him the crack cocaine, nor could he remember specifics about the house where he bought the drugs.
*80 Trunell did, however, testify that he knew the defendant by name and recognized his face at the time these transactions took place, and that he had purchased the cocaine from the defendant. Furthermore, Deputy Ivy Cutrer testified that Trunell had identified the defendant by name as the person from 1 fiwhom he had purchased the cocaine when Trunell turned in the drugs from these transactions.
This matter was tried before a jury. As the trier of fact, the jury is free to accept or reject, in whole or in part, the testimony of any witness. The appellate court will not assess the credibility of witnesses or the relative weight of the evidence to overturn the determination of guilt by the fact finder. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). Additionally, where the key issue is a defendant’s identity as perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by even one witness may be sufficient to support a conviction. State v. Smith, 95-1826, p. 18 (La.App. 1st Cir.9/27/96), 681 So.2d 980, 993, writ denied, 96-2568 (La.3/27/97), 692 So.2d 390. State v. White, 28-095, p. 14 (La.App.2d Cir.5/8/96), 674 So.2d 1018, 1027, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760 and 98-0282 (La.6/26/98), 719 So.2d 1048. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gradick, 29-231, p. 5 (La.App.2d Cir.1/22/97), 687 So.2d 1071, 1073.
Regarding the appellate court’s role in resolving issues of sufficiency of evidence, the Louisiana Supreme Court recently stated:
“The actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.” The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Finally, the “appellate court is constitutionally precluded from acting as a ‘thirteenth juror’ in assessing what weight to give evidence |7in criminal cases; that determination rests solely on the sound discretion of the trier of fact.” (Citations omitted.)
State v. Mitchell, 99-3342, p. 8 (La.10/17/00), 772 So.2d 78, 83.
It is the function of the jury to determine which witnesses are credible. As evidenced by their guilty verdict, the jury obviously found Elie Trunell to be credible and accepted his testimony. (How the question of credibility may have been affected by limitation of cross-examination is deferred to the discussion below.) When this testimony and the other evidence introduced at trial is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that the state proved the essential elements of the crimes, and the defendant’s identity as the perpetrator, beyond a reasonable doubt. Therefore, this assignment of error is without merit.
*81 LIMITATION OF CROSS-EXAMINATION
In his first assignment of error, the defendant argues that the trial court erred in limiting his cross-examination of the state’s chief witness. Specifically, the defendant argues that he was not allowed to question the witness regarding certain criminal charges filed against him in Mississippi. This cross-examination was necessary and proper, according to the defendant, to demonstrate that the witness had some bias or was testifying in order to obtain leniency in these pending matters.
During his cross-examination, the defendant attempted to demonstrate that Elie Trunell was biased or that the state had leverage over him during the following exchange:
Q. You indicated that you cut a deal in order to get out of prison on that murder and burglary charge. Do you remember your testimony under direct?
A. Yes.
Q. Is it true that you’ve cut some other deals to avoid pending prosecutions against you in Natchez?
DA. Well...
BY THE COURT: Mr. Calhoun, can I see you and Mr. Howell at the bench.
(DISCUSSION OFF THE RECORD)
Q. Mr. Trunell, regarding the cutting of deals in Mississippi, do you recall cutting a deal that avoided...
BY MR. HOWELL: I’m going to object to that, Your Honor.
BY MR. CALHOUN: May I finish my question, please?
BY THE COURT: Let him finish his question.
Q. ... cutting a deal with Mississippi authorities to avoid the conclusion of a prosecution against you and two others for the grand larceny of a Lincoln Continental?
BY MR. HOWELL: I’m going to object to that, Your Honor.
BY THE COURT: Objection sustained.
The trial judge went on to state that the question asked by defense counsel was objectionable because the charge he was asking the witness about was not a conviction.
The general rule as provided by article 609.1 of the Louisiana Code of Evidence is that the credibility of a witness may be impeached by introducing evidence that the witness has been convicted of a crime. Evidence of an arrest, an arrest warrant, indictment, prosecution or acquittal may not be used to impeach the general credibility of the witness.
Despite this general rule, it is well settled that the possibility that the prosecution may have leverage over a witness due to that witness’s pending criminal charges is recognized as a valid area of cross-examination. State v. Rankin, 465 So.2d 679, 681 (La.1985); State v. Brady, 381 So.2d 819, 822 (La.1980). The hope or knowledge of a witness that he will receive leniency from the state is highly relevant to establish the bias or interest of the witness. State v. Brumfield, 546 So.2d 1241, 1246 (La.App. 1st Cir.1989), writ denied, 556 So.2d 54 (La.1990). Cross-examination about a witness’s arrest is proper when it is not for the purpose of impeaching the witness’s general credibility, but is to establish that the district attorney’s office has leverage over the witness as a result of the pending charge, or at least that the witness might assume so. State v. Brady, 381 So.2d at 822; State v. Harrison, 484 So.2d 882, 884 (La.App. 1st Cir.), writ denied, 488 So.2d 688 (La.1986).
As noted above, the trial judge stated that the defendant could only question the *82 ■witness about convictions. While that is the general rule, the jurisprudence has clearly held otherwise when the purpose of the inquiry is to show the bias of the witness or that the state may have some leverage over the witness.
The jurisprudence, prior to the adoption of the evidence code, interpreted the former statutes embodied in La. R.S. 15:492 and 495,[2] which provided as follows:
§ 492. Bias, interest, or corruption of witness; questions concerning particular acts
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
§ 495. Impeachment by evidence of conviction; condition precedent to proof by others; prohibition against cross-examination as to indictment or arrest
Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has even been indicted or arrested, and |incan only be questioned as to conviction, and as provided herein.
The pertinent articles of the Code of Evidence now in effect are the following:
Art. 607. Attacking and supporting credibility generally
[[Image here]]
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(Emphasis added.)
Art. 609.1 Attacking credibility by evidence of conviction of crime in criminal cases
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
The Louisiana Supreme Court has held that cross-examination to show bias, interest, hope of reward, or corruption is allowed as a part of the constitutional right of confrontation. State v. Brady, 381 *83 So.2d at 822; see also State v. Senegal, 316 So.2d 124, 125-126 (La.1975); State v. Lewis, 236 La. 473, 108 So.2d 93, 96 (1959).
The courts have made a distinction between cross-examination related to prior criminal conduct for purposes of impeaching the general credibility of the 11T witness, strictly regulated by former La. R.S. 15:495 (and now Code of Evidence article 609.1), and cross-examination for the purpose of showing bias, interest or corruption of the witness, guaranteed by the state and federal constitutions. See State v. Lewis, 108 So.2d at 96; State v. Senegal, 316 So.2d at 125-126;, State v. Harrison, 484 So.2d at 884; and State v. Brady, 381 So.2d at 822 wherein the Louisiana Supreme Court stated:
The trial judge’s ruling missed the point. Defendant’s attempted cross-examination about the arrest was not for the purpose of impeaching the witness’ general credibility — the arrest was not presented as proof that the witness is not credible because he has an arrest record. If that had been the case the trial court’s ruling would have been correct. Rather, the focus of defendant’s questioning was to establish that the district attorney’s office had leverage over Mr. Brown as a result of the pending charge (or at least that Mr. Brown might have assumed so), a reason why Mr. Brown’s credibility was or might be suspect in this particular case. R.S. 15:492 permits a witness to be questioned as to ‘any particular fact showing or tending to show’ bias or interest in the case on trial and this Court has held on numerous occasions that a witness’ hope or knowledge that he will receive leniency from the state is highly relevant to establish bias or interest. (Citations and footnote omitted.)
In the present case, the defendant was attempting to show that by collaboration between law enforcement authorities in Adams County, Mississippi and those in West Feliciana Parish, the district attorney had some leverage over the witness because of pending charges against the witness in Mississippi, or that the witness might have assumed the district attorney had such leverage. In those proceedings, following a suggestion on behalf of Trunell of his own lack of capacity to proceed, the charges were placed on inactive status subject to the right of the district attorney of Adams County to move the court to replace them on the active docket.
If there is some leverage with respect to pending charges against a witness for whatever reason, the defendant had the right to prove such leverage by extrinsic | ^evidence, after laying the proper foundation on cross-examination of the witness. Interest and external influence (or “corruption”) of testimony affect credibility.
The defendant offered no extrinsic evidence at trial with respect to the interest of corruption of the witness. However, he was prevented from doing so by the refusal of the court to allow him to lay the foundation on cross-examination required by State v. Hookfin, 476 So.2d 481, 491 (La.App. 1st Cir.1985); and State v. Glynn, 94-0332 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1307, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464.
The trial court’s ruling prevented the defendant from directly challenging the disinterestedness of the prosecution’s main witness and further prevented the jury from considering relevant information which could have diminished or negated the credibility of the state’s main witness. We conclude that the limitation of defendant’s cross-examination was prejudicial to his substantial rights, both his statutory right to impeach a witness’ credibility by showing bias or interest and his constitutional right to cross-examine a witness *84 against him. The failure to allow cross-examination about pending criminal charges to show bias or interest is reversible error. State v. Brumfield, 546 So.2d at 1246. This assignment of error has merit. We hereby reverse the defendant’s convictions and vacate the sentences, and remand this matter to the trial court for a new trial. Finding merit on this assignment of error, we pretermit consideration of the remaining assignments of error.
CONVICTIONS REVERSED; SENTENCES VACATED; REMANDED TO TRIAL COURT.
PARRO, J., dissents with reasons.

. La. R.S. 15:492 and 495 were repealed by Acts 1998, No. 515, § 8, effective January 1, 1989.